## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MEGAN RUSH and ) | |
| HAILEY GRAHAM; ) | |
| ) | |
|     Plaintiffs ) | Civil Action No. _____ |
| ) | |
| v. ) | |
| ) | |
| SR EMPLOYERS, INC. and ) | COLLECTIVE ACTION |
| SUNRIDGE MANAGEMENT GROUP, INC.; ) | |
| ) | |
|     Defendants ) | |

_____

## COMPLAINT

Plaintiffs Megan Rush and Hailey Graham, through undersigned counsel, hereby allege as follows:

## THE PARTIES

1. Megan Rush is an individual of the full age of majority. Ms. Rush resides within this District.

2. Hailey Graham is an individual of the full age of majority. Ms. Graham resides within this District.

3. Defendant SR Employers, Inc., is a Texas corporation licensed to do business in Louisiana. Its principal business office is 1605 LBJ Freeway, Suite 250, Dallas, Texas. Its registered office in Louisiana is 3867 Plaza Tower Drive, Baton Rouge, Louisiana.

4. Defendant Sunridge Management Group, Inc., is a Texas corporation licensed to do business in Louisiana. Its principal business office is 1605 LBJ Freeway, Suite 250, Dallas, Texas. Its registered office in Louisiana is 3867 Plaza Tower Drive, Baton Rouge, Louisiana.

///

## JURISDICTION AND VENUE

5. This Complaint is brought pursuant to the Fair Labor Standards Act ("FLSA"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. The Court has pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

6. A substantial part of the events or omissions giving rise to this claim occurred within this District. Venue is therefore proper in this Court. 28 U.S.C. § 1391.

7. Defendants are engaged in commerce pursuant to 29 U.S.C. § 203(s).

8. Defendants have a common business purpose and exercise unified operation and common control. They therefore qualify as an enterprise pursuant to 29 U.S.C. § 203(r).

9. Defendants' annual gross volume of sales made or business done, as an enterprise, has exceeded $500,000 for each year during the relevant time period.

10. Plaintiffs request trial by jury on all counts so triable.

## FACTUAL ALLEGATIONS

11. Defendants SR Employers, Inc. and Sunridge Management Group, Inc. (collectively, "Sunridge") are a property management company based in Dallas, Texas and operating in at least ten states throughout the country.

12. Defendants manage at least five multifamily apartment complexes within the state of Louisiana, including properties located within this district.

13. Plaintiffs Megan Rush and Hailey Graham worked for Sunridge at the "Parc at Denham Springs" property located in Livingston Parish.

14. Plaintiffs both held the title of "Leasing Consultants."

15. Plaintiffs were non-exempt and paid on an hourly basis of $13.07 per hour for regular hours, and $19.605 per hour for overtime hours.

16. In March 2022, the Louisiana State Fire Marshal inspected the Parc at Denham

Springs and discovered a malfunction in the fire alarm system.

17. The Fire Marshal therefore ordered Defendants to maintain a 24-hour fire watch on the property at all time.

18. As part of this fire watch, the Fire Marshal stated that Sunridge must perform a "periodic patrol" around the property every thirty minutes, around the clock, to watch for any alarm or hazardous conditions.

19. These periodic patrols were to be logged on a "Fire Watch Log Sheet" provided by the Fire Marshal.

20. Originally, Plaintiffs were told that nine of Defendants' employees would participate in performing the fire watch.

21. In the end, however, only Ms. Rush and Ms. Graham were assigned to the fire watch.

22. Brad Ryland, the Property Manager at the Parc at Denham Springs, told Ms. Graham and Ms. Rush that they would be paid for the full 24-hour shift while they were on fire watch.

23. Ryland also informed the Plaintiffs that he would not be performing any after hour fire watch duties, because he was "salaried."

24. Ms. Graham and Ms. Rush continued performing their Leasing Consultant duties during their regular 9:00 am to 6:00 pm shift.

25. After 6:00 pm, Ms. Rush and Ms. Graham stayed on the property and conducted regular periodic patrols throughout the night and early morning.

26. Between patrols, Ms. Rush and Ms. Graham stayed either in the office, or in an empty unfurnished apartment which Sunridge allowed them to use while on fire watch. Sunridge did not provide any furniture, bedding, linen, cookware, toiletries, or any other

necessities for Ms. Rush or Ms. Graham.

27. Ms. Rush and Ms. Graham performed periodic patrols throughout the night, believing that they would be compensated for their efforts.

28. On April 1, 2022, Ms. Rush and Ms. Graham turned in timesheets reflecting the 24-hour shifts they had been working.

29. Crystal Maynard, the Sunridge HR Director, sent an email on April 4, 2022 stating that "[w]e need to deduct the hours each of them sleep and their lunch breaks for all time that were participating in the 'fire watch.'"

30. At no point before April 4th had anyone at Sunridge told Ms. Rush or Ms. Graham anything about "sleep time" or "lunch breaks."

31. At no point did Ms. Rush or Ms. Graham agree to any regularly scheduled sleep period, nor was one provided.

32. In fact, Plaintiffs could not take any meaningful break, as the Fire Marshal had expressly required that periodic patrols be performed every 30 minutes, around the clock.

33. Ms. Rush and Ms. Graham protested, but Sunridge management confirmed that 8 hours of daily sleep time would be deducted from their next paychecks.

34. Sunridge Leasing Consultants are eligible for commission payments, including commission on new leases and lease renewals.

35. During the course of their employment, both Ms. Rush and Ms. Graham earned commissions.

36. Sunridge did not take these commissions into account in determining Plaintiffs' regular rate for overtime purposes.

37. Ms. Rush and Ms. Graham both earned accrued paid sick leave and paid vacation leave during their employment with Sunridge.

38. Neither Ms. Rush nor Ms. Graham received payment for her final accrued paid sick leave or paid vacation leave in their final paycheck.

39. Sunridge management stated that Defendants would not pay the accrued vacation or sick pay because Plaintiffs had not provided two weeks' notice of resignation.

40. Between April 1st and April 5th, Ryland represented to Plaintiffs that their timesheets would be corrected and additional payment would be made. However, that did not happen.

41. On April 5th, Plaintiffs turned in their two weeks' notice of resignation to Ryland due to Sunrudge's refusal to pay them for the time they worked.

42. Once Ryland read the notices of resignation, he told Plaintiffs that they would not be receiving any additional payment for the work they performed on fire watch. Plaintiffs' employment then ended that same day.

## FIRST CAUSE OF ACTION
## UNPAID OVERTIME – DEDUCTED HOURS

43. Plaintiffs hereby reallege and reincorporate all paragraphs set forth above.

44. The Fair Labor Standards Act ("FLSA") requires that employers pay employees at least $7.25 per hour for all hours worked, up to forty hours in a workweek, and a time-and-a-half overtime premium for hours worked over forty. 29 U.S.C. §§ 206-207.

45. Defendants have underpaid overtime by refusing to pay Plaintiffs for their 24 hour fire watch shifts, and by unlawfully deducting sleep time and lunch time.

46. Due to the required periodic patrols, Plaintiffs were not able to take a genuine sleep break or lunch break during this period.

47. There was no express or implied agreement to deduct any time from Plaintiffs' paychecks, as the supposed "sleep break" and "lunch break" deductions were only revealed

after the Plaintiffs turned their time sheets in.

48. Defendants did not provide Plaintiffs with adequate sleeping facilities, but only allowed use of a single one-bedroom unfurnished apartment to share with no bed, mattress, furniture, cooking equipment, or other necessities.

49. Defendants' deduction of hours was and is willful and not based in a good faith belief that their conduct was in accordance with the law.

50. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs suffered lost compensation for time worked over forty (40) hours per week, and hereby seek recovery of all such sums plus liquidated damages.

51. Plaintiffs are entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

## SECOND CAUSE OF ACTION
## UNPAID OVERTIME - REGULAR RATE

52. Plaintiffs hereby reallege and reincorporate all paragraphs set forth above.

53. The FLSA requires that overtime premiums be paid at "a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a).

54. The "regular rate" includes "all remuneration paid to, or on behalf of, the employee," subject to eight discrete statutory exceptions. 29 U.S.C. § 207(e)(1) – (8).

55. Defendant calculates overtime for Plaintiffs and other Leasing Consultants based on their base hourly rate, without taking into account commission.

56. Such commissions are not included in the statutory exceptions set forth above, and Defendant's exclusion of those payments from the regular rate compensation results in underpayment of overtime.

57. Defendants' underpayment was and is willful and not based in a good faith belief

that their conduct was in accordance with the law.

58. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs suffered lost compensation for time worked over forty (40) hours per week, and hereby seek recovery of all such sums plus liquidated damages.

59. Plaintiffs are entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

### THIRD CAUSE OF ACTION
### LOUISIANA WAGE PAYMENT ACT

60. Plaintiffs hereby reallege and reincorporate all paragraphs set forth above.

61. Defendants failed to pay Plaintiffs all wages owed on or before the next regular payday or no later than fifteen days following the date of resignation.

62. In particular, Defendants have withheld payment of accrued vacation wages and paid sick leave.

63. Plaintiffs have demanded payment of wages from Defendants, to no avail.

64. Defendants' nonpayment was and is willful and not based in a good faith belief that their conduct was in accordance with the law.

65. Defendants' actions violate the Louisiana Wage Payment Act. Plaintiffs are entitled to full payment of unearned wages, plus penalty wages according to statute, and recovery of reasonable attorneys' fees and costs.

### COLLECTIVE ACTION ALLEGATIONS

66. Plaintiffs incorporate by reference and re-allege each and every allegation contained above as though fully set forth herein.

67. Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring their Second Cause of Action as a collective on behalf of all other current and former similarly situated Leasing Consultants or

other commissioned employees who worked for Defendants within three years prior to the date of filing this lawsuit.

68. On information and belief, Defendants' miscalculation of the regular rate based on failure to include commission payments is a companywide policy that applies to all Leasing Consultants and other commissioned employees of Sunridge.

69. The proposed FLSA collective is defined as:

> All individuals employed by SR Employers, Inc., or Sunridge Management Group, Inc., as Leasing Consultants or other commissioned employees, within three years of the date of the filing of the Complaint in this action.

70. Plaintiffs are similarly situated to the remaining members of the collective, who have all been subjected to the same unlawful payroll practices and policies.

71. Plaintiffs request that the Court authorize expedited discovery regarding the collective action allegations set forth herein.

72. Plaintiffs further request that, at the soonest practicable time, the Court order notice be given to the remaining members of the collective so that they may exercise their right to opt in to this action.

//

//

**WHEREFORE**, Plaintiffs respectfully pray for judgment as follows:

    a.    For an award of all unpaid wages according to proof;

    b.    For an award of liquidated damages pursuant to 29 U.S.C. § 216(b);

    c.    For an award of reasonable attorney's fees and costs of suit;

    d.    For damages and penalties under the Louisiana Wage Payment Act;

    e.    For injunctive or equitable relief as provided by law;

f.      For pre and post-judgment interest to the extent provided by law; and

g.      For such other and further relief as may be just and proper.

Respectfully Submitted,

*/s/ Charles J. Stiegler*
Charles J. Stiegler, #33456 (TA)
STIEGLER LAW FIRM LLC
318 Harrison Ave., Suite #104
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com